LAURA A. BICKFORD *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Middlesex.    February 1, 1937. — March 6, 1937.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Negligence,* Street railway. *Boston Elevated Railway Company. Evidence,* Relevancy and materiality; Offer of proof; Opinion: expert. *Practice, Civil,* Exceptions.

Without evidence of improper construction or negligent use of its track, the Boston Elevated Railway Company was not, under St. 1923, c. 358, § 1, liable for injury caused by a depression in an adjacent pavement; evidence merely that the depression was not due to structural defects in the highway and of the length of time the track had been in use was not sufficient.

An expert witness properly was not permitted to answer a question, whether a depression in a pavement might "not have been caused by the jar and vibration consequent upon the operation of" street cars over adjacent rails, since the issue being tried was whether it was so caused.

Hypothetical questions to an expert witness based on facts not in evidence were properly excluded.

Evidence included in an offer of proof made after the exclusion of a question and broader than the question could not be considered by this court upon exceptions to the exclusion of the question and offer of proof.

TORT. Writ in the Superior Court dated June 20, 1930.

The action was tried before *Donahue*, J., who ordered a verdict for the defendant. The plaintiff alleged exceptions.

*C. A. Warren*, (*N. R. Voorhis & G. Luftman* with him,) for the plaintiff.

*C. S. Walkup, Jr.*, for the defendant.

PIERCE, J. This is an action of tort to recover damages for personal injuries sustained by the plaintiff when she fell while crossing Concord Avenue near the intersection of Chauncey Street, in the city of Cambridge. The answer is a general denial and an allegation of contributory negligence. The bill of exceptions states that "The pleadings may be referred to and are hereby made a part hereof"; and that "The photographs introduced in evidence at the trial may be used at the hearing before the Supreme Judicial Court."

The action was tried to a jury. At the close of the plaintiff's case the trial judge granted a motion by the defendant for a directed verdict on all the evidence, to which, and to the exclusion of evidence offered by the plaintiff and of questions propounded in her behalf, she duly excepted. The questions of law raised by these exceptions involve the correctness of the action of the trial judge. No question of pleading was raised.

At the trial it appeared that on April 8, 1930, at about nine o'clock in the evening, the plaintiff was crossing Concord Avenue in Cambridge at a point near the intersection of Chauncey Street; that in doing so she caught her foot or toe on or against the outer rail of the outbound track of the defendant, causing her to stumble and fall; that she fell in such a way that her right elbow joint was fractured, permanently disabling her; that she suffered at the time of the trial "a severe limitation of motion of her right arm"; and that no further recovery is possible.

The question whether the city of Cambridge was liable for the plaintiff's injury in consequence of the defective condition of Concord Avenue became moot when the plaintiff released the city of Cambridge on June 24, 1930.

The issue of law involved in the present action arises solely on the plaintiff's contention that, on the testimony received and offered at the trial, the defendant was liable to the plaintiff under St. 1923, c. 358, § 1, which reads: "During the period of public operation of the Boston Elevated Railway Company under the provisions of chapter one hundred and fifty-nine of the Special Acts of nineteen hundred and eighteen, and acts in amendment thereof and supplementary thereto, the Boston Elevated Railway Company shall keep in repair, to the satisfaction of the superintendent of streets, street commissioners, road commissioners, or surveyors of highways, or the division of highways of the department of public works, in the case of state highways, or the metropolitan district commission, in the case of metropolitan boulevards, the paving, upper planking or other surface material of the portions of streets, roads and bridges occupied by its tracks; and if such tracks occupy unpaved streets or roads, shall, in addition, so keep in repair eighteen inches on each side of the portion occupied by its tracks, and shall be liable for any loss or injury that any person may sustain by reason of the carelessness, negligence or misconduct ·of its agents and servants in the construction, management, and use of its tracks." The plaintiff concedes that Concord Avenue is a paved street, and that the duty of repair of the highway by the Boston Elevated Railway Company, independent of St. 1923, c. 358, § 1, was confined to the space occupied by its tracks. *Gast* v. *Boston Elevated Railway*, 270 Mass. 330. *Lenoue* v. *Worcester Consolidated Street Railway*, 257 Mass. 285. She does not contend that the defendant was liable because of its failure to "keep in repair" the portion of the highway where the accident occurred. As above stated, she relies solely on that part of St. 1923, c. 358, § 1, which reads ". . . shall be liable for any loss or injury that any person may sustain by reason of the carelessness,

negligence or misconduct of its agents and servants in the construction, management, and use of its tracks."

The plaintiff directs attention to St. 1871, c. 381, § 21, which is identical in its requirements of the corporation with St. 1923, c. 358, § 1. She also directs attention to *Osgood* v. *Lynn & Boston Railroad*, 130 Mass. 492, 493, wherein this court, construing St. 1871, c. 381, § 21, said: "If a street-railway corporation, by the carelessness of its agents or servants, constructs its track so as to create a nuisance or defect in the street, the law makes it liable to any person injured by such carelessness." The plaintiff notes that defective construction of the street railway tracks was relied on as the basis of the plaintiff's right of action in *Osgood* v. *Lynn & Boston Railroad*, 130 Mass. 492, and that "carelessness, negligence or misconduct . . . in the construction, management, and use" of the defendant's tracks is relied on in the case at bar, and contends that the same liability attaches to carelessness, negligence or misconduct in the management and use of tracks as attaches to the defective construction thereof, and that *Osgood* v. *Lynn & Boston Railroad*, 130 Mass. 492, declares the law applicable to the case at bar.

In support of her contention the plaintiff called as a witness one James F. Hughes, construction foreman of the city of Cambridge. He testified, in substance, that he did not observe and did not know what the condition of Concord Avenue was in April, 1930; that he could not tell whether the depressions near the street car tracks were due to any structural defect in the construction of the highway. When shown certain photographs (Exhibits 3 and 4), he stated that it was his opinion that the depressions by the rails were not due to any structural defects in the highway. It is obvious that this negative testimony did not sustain the plaintiff's contention that there was carelessness, negligence or misconduct in the construction, management and use of the defendant's tracks which could be found to be the cause of the defective surface of the street at the point where the plaintiff was injured.

The plaintiff then called as a witness one Thomas F.

Kivell, who for eleven years had been track master for the northern division of the Boston Elevated Railway Company, which included the location where the accident occurred. In substance, the witness testified that he was not an engineer but a "practical man growing up in the service"; that one of the lines operated under his charge was that along Concord Avenue, called the Huron Avenue line; that the Huron Avenue line was an old line and had been in operation for many years; that he was connected with the work of rebuilding the line which began in September, 1930; that so far as he knew there was no substantial change in the condition of the roadbed and the tracks at the place of the accident between April, 1930, when the accident occurred, and the time the tracks were relaid in the fall of 1930; that in the fall of 1930, at the place of the accident, he observed that "the old tracks, ties, concrete of the old structure" were taken out and "new ties, track and structure put in"; that as the work was being done he observed that the old line was of a type called beam concrete; that by beam type was meant a concrete beam "under the rail and up over the top of the tie and down again under the other rail"; that "the tie is across the beam" and the ties were over two feet apart; that the concrete construction was a continuous concrete base; that "right under the rail and around to the end of the tie the base was about a foot thick and then comes up to a thickness of about six to eight inches"; that the ties rested on ordinary gravel; that between the ties was concrete, "but the concrete was not under the ties which were laid in dirt with concrete between them"; that the ends of the ties were encased in concrete; that the track had to be ballasted, which involved placing the material to be used for the ballast — in this case gravel — and then tamping it; and that in 1905 gravel ballast was used. The witness was then asked: "Could you tell from the condition of the ties and the appearance of the concrete . . . how long that old line had probably been there?" He did not answer "Yes" or "No" and the question was excluded, subject to the plaintiff's exception. The plaintiff does not specifically argue this exception, but, assuming the qualification of the wit-

ness, the question was excluded rightly, because the mere
length of time the line had been in operation was no evidence
of carelessness, negligence or misconduct of the defendant's
agents and servants in the construction, management and
use of its tracks, in the absence of evidence that the line had
not been kept in proper repair from the time of its construc-
tion.   This witness also testified, in substance, in response
to questions of the plaintiff, that there was a good deal of
vibration in the operation of electric cars; that as a practical
man he tried to have the rails laid and maintained in such
a way that they would not create "a jar in the highway"
and would not be loose; that from his experience and obser-
vation as a "railroad man" he knew that in the operation of
cars there was more or less vibration in some places; that
the amount of vibration varied; that if there was vibration
there was a jar; that the vibration and jar did not always
affect the adjoining surfaces; that he did not know that such
an effect was probable; that in 1930, prior to the accident to
the plaintiff, repairs were made to the parts of the highway
maintained by the defendant which were rendered neces-
sary by the jar and vibration of the tracks in the operation
of the railway; that the method of finding vibration at the
place of the accident was for him to "inspect the rails and if
there was vibration he would observe it"; that there was no
other method of track inspection adopted by the defendant
in this location; that this was the only method in paved
streets; and that he had never stood at the corner of Chaun-
cey Street and Concord Avenue to observe whether there
was vibration in the rails at that point and did not know
whether there was any.   The witness was then shown photo-
graphs (Exhibits 2 and 5) and testified that he observed that
the surface of the highway adjacent to the rail appeared to
be in an altogether different condition from the general sur-
face of the street.   He was then asked: "Now, calling your
attention specifically to this depressed condition of the high-
way at the foot of Chauncey Street, near the outbound rail,
I ask you whether or not the depressed condition at that
point may not have been caused by the jar and vibration
consequent upon the operation of cars over the rails at that

point?" Upon the defendant's objection the question was
excluded, and the plaintiff excepted. The question was ex-
cluded rightly, the issue being not whether the depression
at the place of the accident "may not have been caused by
the jar and vibration consequent upon the operation of cars
over the rails," but whether the depression as matter of fact
was caused by vibration or jar during the passage of cars
over the rails.

William Allen Bryant, called as a witness by the plain-
tiff, testified that he was forty-five years of age, a civil
engineer, and a graduate from the Massachusetts Institute
of Technology in the year 1914; that he took there a course
in civil engineering having to do with railroad and hydraulic
engineering; that this course of study had to do with the
principles of railroad construction and maintenance as well
as the principles of highway construction and maintenance;
that since his graduation he had practised his profession
exclusively; that since 1914 he had had to do with high-
way and track construction, maintenance and supervision;
"that he did a great deal of highway work, upon design
especially, with the getting up of new subdivisions, laying
out of street design, construction of streets, the designing of
railroad bridges carrying the railroad traffic and the design
of bridges, private railroad sidings and spur tracks; that
he was the engineer for the Hood Rubber Company and
handled their spur tracks as well as the design of their build-
ings; that aside from his technical education, going back
over many years, he had known of the methods and tech-
nique of highway and street railway construction and opera-
tion; that there is no essential difference in the appearance
of [track] construction between street and steam railroads;
that his education at Technology involved both; that he
had acted in an advisory capacity to the town engineer in
Brookline and in the construction of the tracks over some
of the bridges there; that he had done some of the designing
of those bridges and the checking of the loads and proper
sizes of the structure that was to carry the load; that as to
the actual design of the street railways that is practically
all done by the street railways themselves, that is 'you are

employed by a street railway. I don't think there is any engineer would say he has had practical experience in the construction. He may supervise and approve it.'" The witness then was asked by the judge: "They haven't laid much track since you got out of college, have they?" and he answered: "Not a great deal. Rebuilt, that is about all." The witness further testified "that in the course of his experience he had observed the effect of the operation of street railways on adjoining highways and from his education and observation he knew how to determine the cause, or to determine what effect the operation of street railways in different conditions have on the adjoining highways; that from an examination of the photographs in evidence he knew the type of rails in use at the time and place of the accident and about the different type of rails used in street railway and in steam railroad construction; that from his technical education he knew how the rails in the case of steam railroads and street railways should be laid with respect to the adjoining highway and the effect of excessive weight on rails and on the road-bed, which either is of too light construction or degenerated construction, on the adjoining highway; that the type of rail in use at the time and place of the accident, shown by the photographs introduced in evidence, was that known as a girder rail, the same as testified to by the witness Kivell." Thereafter the course of the trial was as follows: "Q. [to the witness Bryant]: In an approved railway construction is there any vibration through the use and operation of street railway tracks? A. Yes." "Q. In such cases can you tell the court whether or not there is always vibration or only occasional vibration?" This question was excluded.

It is impossible to say whether the question was excluded because the judge found as a fact that the witness was not qualified as an expert to answer the question, or because the question assumed facts not warranted by the evidence. Assuming the exclusion of the question did not rest on the want of qualifications of the witness, but was based on the defendant's contention that no evidence had been received or offered of any excessive or unreasonable amount of vibration in the operation of the cars in the instant case, and that

no foundation had been laid to show that "vibration" or "occasional vibration" would or could cause the condition in Concord Avenue complained of, the offer of proof made by the attorney for the plaintiff went far beyond anything asked for in the question excluded. The offer of proof, which also was excluded, reads: "I offer to prove by this witness that the depressed condition of the highway adjacent to the track was due to the vibration of the rails and the jarring of the rails and the ties beneath them, and that the effect was to undermine and cause the adjoining highway surface to settle; that this vibration and jarring was due either to improper construction or failure to properly maintain the tracks, ties and roadbed, with the result that disintegration had progressed to a point of its being dangerous and unsafe to operate cars of the size and weight that were in operation on this line at the time of the accident, and that the size and weight of the cars then in operation were heavier than could safely be operated on the railroad in the condition in which it was at the time without injuriously affecting the adjoining highway."

If the witness had attempted to say all that the plaintiff's attorney said he would say, such statements by the witness could have been struck out as unresponsive. It may be noted that the exclusion of the question and of the offer of proof did not preclude the plaintiff from proving the various propositions if she could do so by any proper means. The offer of proof, so far as it was relevant to the questions asked, showed nothing of material help to the plaintiff. So far as it went beyond the questions, it cannot be considered. *Coral Gables, Inc.* v. *Beerman, ante,* 267.

The witness then testified, in substance, that he was able to give an opinion as to what caused the depression just outside the rail on Concord Avenue from an examination of the photographs (Exhibits 2 and 5) and consideration of the conditions disclosed by the photographs; that in so doing he utilized the education and technical knowledge he had and took into consideration the type and weight of the cars operated on that line as testified to by a witness "who came from the Elevated." The witness was then asked: "What

in your opinion was the cause of the depressed condition?"
The question was excluded and the plaintiff excepted. The
plaintiff's attorney then stated to the judge: "I suppose I
should say I would expect the witness to testify that the de-
pression was the result of the improper condition and use
of the railroad." The witness then testified that "he had
noticed the lurching of cars, also the up and down movement
as against the side sway," and stated that he could testify,
from his education and training and observation as an
engineer, "as to the effect of this up and down motion and
the side swaying of the cars in operation upon the rigidity
of the rails on which the cars are operated." He was then
asked: "What is it?" Upon the defendant's objection this
question was excluded subject to the plaintiff's exception,
and the plaintiff's attorney stated: "I expect the witness's
answer will be that they do affect the rigidity and tend to
loosen up the rails."

It is manifest that the relevancy and materiality of this
question and of the preceding question excluded depend
upon proof — which is not in the record — that would
reasonably connect the defendant's construction and main-
tenance of its tracks at the place of the accident, or the
operation of cars thereon, with negligence by the defendant
as the cause of the depression outside the rails at the place
of the accident to the plaintiff. It is impossible to say on the
record whether the exclusion of these questions was due to a
finding by the judge, not expressed, that the witness was not
qualified to give an opinion upon these matters, or was be-
cause the evidence in the case did not warrant a finding of
fact necessary to the reception of the opinions of the witness.
The exclusion of the opinion (stated in one of the offers of
proof) that the depression was the result of the improper
condition and use of the railway was not prejudicial error,
because that opinion is merely a conclusion based on unre-
ported evidence, and because there is no proper offer to show
and no evidence in the record to support an allegation of
improper condition or use. Testimony given by the witness
that vibration and jar would be an adequate cause for the
depression of the highway adjacent to the rails, shown in the

photographs, is no evidence that there was any unreasonable or negligent vibration or jar, or that the vibration or jar did in fact cause the depression shown in the photographs.

We think there was no error in the exclusion of evidence, and that without the excluded evidence the remaining evidence in the record, with the inferences the jury could warrantably have drawn therefrom, was insufficient to support a finding that the defective condition of the highway at the place of the accident was due to the "carelessness, negligence or misconduct" of the defendant's agents and servants.

It is not necessary to consider the effect of the release of the city of Cambridge, if there was any, upon the right of the plaintiff to maintain this action under St. 1923, c. 358, § 1.

*Exceptions overruled.*