ELIZABETH F. HAWKES, administratrix, *vs.* METROPOLITAN TRANSIT AUTHORITY
(and a companion case[1]).

Suffolk.    October 5, 1951. — November 29, 1951.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Boston Elevated Railway Company. Street Railway,* Repair of way. *Way,* Public: defect. *Words,* "Occupied by its tracks."

The obligation of the Boston Elevated Railway Company imposed by St. 1923, c. 358, § 1, to keep in repair the portions of paved streets "occupied by its tracks" placed upon the company no responsibility for injuries to a pedestrian resulting from an alleged defect in the

---

[1] The companion case is by the same plaintiff against the city of Boston.

pavement of a street at a place close to the outside of one of the rails of its track and above underground space occupied by the base of the rail and its support.

A rise "straight upward" of two or three inches in the pavement of a street, not at a designated crosswalk, and immediately adjacent to the outside of one of the rails of a street railway track and running parallel thereto for an appreciable distance in a residential part of a city, was not a defect within G. L. (Ter. Ed.) c. 84, § 15.

Two ACTIONS OF TORT.   Writs in the Superior Court dated April 3, 1946.

The actions were tried before *Baker,* J.

*F. I. Rose,* for the plaintiff.

*R. L. Mapplebeck,* for Metropolitan Transit Authority.

*J. E. Keefe, Jr.,* Assistant Corporation Counsel, (*R. B. Nolan,* Assistant Corporation Counsel, with him,) for the city of Boston.

SPALDING, J.   These are two actions of tort.   The original plaintiff (hereinafter sometimes called the plaintiff) died after the actions were commenced and his administratrix was substituted as a party plaintiff.   One of the actions was originally brought against the Boston Elevated Railway Company but prior to the trial the Metropolitan Transit Authority, hereinafter called Metropolitan, was substituted as a party defendant.   See St. 1947, c. 544, § 20.   At the close of the evidence the judge directed a verdict for Metropolitan.   The case against the city of Boston was submitted to the jury and a verdict for the plaintiff was returned, which was recorded under leave reserved.   Thereafter the judge entered a verdict for the defendant.   The cases come here on a consolidated report in which the only questions to be determined are the correctness of the judge's action in directing a verdict in the case against Metropolitan and in entering a verdict for the defendant in the case against the city.

The following facts could have been found: The accident happened on Hyde Park Avenue, which is located in the Hyde Park section of Boston.   Hyde Park Avenue, a paved public highway with a sidewalk on each side, runs north and south.   The width of the street measured from curb to

curb is fifty-four feet. In the middle of the street there are four street car rails. Two of these constitute the outbound track and the other two the inbound track. The space between the rails of each track is paved with granite blocks set in cement. Between the tracks is a space of about five feet, paved with asphalt, which is called the "dummy."

On January 16, 1946, around 1:30 A.M. the plaintiff was walking easterly across Hyde Park Avenue on a slightly diagonal course. As he proceeded over the inner or easterly rail of the outbound track his foot struck a rise in the pavement of the "dummy" and he stumbled and fell. In doing so his left hand came to rest on one of the inbound rails and was crushed under the wheels of a passing street car.

The evidence as to the height of the rise was conflicting. The evidence most favorable to the plaintiff was that it was two or three inches high. The rise, which was separated from the easterly rail by a crevice of one quarter to one half an inch in width, was variously described as "straight upward," "sudden [and] sharp," and "straight up and down." This condition was "general for an appreciable distance along the inner rail of the outbound tracks."

The place where the plaintiff fell was not on a designated crosswalk; it was about eight feet south of a projection of the southerly curb line of Neponset Avenue, which intersects Hyde Park Avenue on the east. Although there are some stores near by, it would appear from photographs brought here by the report that the district was essentially residential.

1. The judge rightly directed a verdict in the case against Metropolitan. If the plaintiff made out a case against Metropolitan it must be because the place where he fell was in a defective condition which Metropolitan's predecessor, the Boston Elevated Railway Company, was under a duty to remedy, for the plaintiff does not contend that the street car which ran over his hand was negligently operated. The statute [1] which defines the duty of the

---

[1] The accident occurred prior to the creation of the Metropolitan Transit Authority by St. 1947, c. 544. As to the duty of Metropolitan with respect to repair of public ways see St. 1947, c. 544, § 26; G. L. (Ter. Ed.) c. 161, § 89.

Boston Elevated Railway Company in repairing roads and streets is St. 1923, c. 358, § 1, where it is provided that "the Boston Elevated Railway Company shall keep in repair . . . the paving, upper planking or other surface material of the portions of streets, roads and bridges occupied by its tracks; and if such tracks occupy unpaved streets or roads, shall, in addition, so keep in repair eighteen inches on each side of the portion occupied by its tracks . . . ." Since Hyde Park Avenue was a paved street, the last clause quoted above has no application and the duty of repair of the Boston Elevated Railway Company was confined to the "portions of streets, [or] roads . . . occupied by its tracks." *Bickford* v. *Boston Elevated Railway*, 296 Mass. 580, 582. Admittedly, the alleged defect here was on a portion of the street outside the inbound and outbound tracks. The plaintiff argues, however, that it was within the area subject to the control of the Boston Elevated Railway Company because the base of the easterly rail and its support extended easterly underground beyond the location of the alleged defect on the surface. But the law is otherwise. In construing an earlier and substantially similar statute (Pub. Sts. c. 113, §§ 32, 33) this court rejected a like contention and held that the phrase "occupied by its tracks" meant "the rails and the space between them on and over which the cars pass." *Boston* v. *Boston Elevated Railway*, 186 Mass. 274. That decision was followed in *Schneider* v. *Boston Elevated Railway*, 259 Mass. 564, 565. Those cases are controlling here.

There was evidence that it was a common practice for the Boston Elevated Railway Company to resurface the "dummy" whenever it was disturbed in connection with the repairing of its tracks. Should we hold, as the plaintiff urges, that the company would be liable for the consequences of work of this sort negligently done or maintained it would not aid the plaintiff; there was nothing here to show that the Boston Elevated Railway Company was in any way responsible for the condition existing at the place where the plaintiff fell.

2. The sole question to be determined in the case against the city of Boston is whether the projection which caused the accident could have been found to be a "defect" within the meaning of G. L. (Ter. Ed.) c. 84, § 15. The standard of duty placed on a municipality "is not an absolute or inflexible one, but should be given an application which is related to the character of the way and to the kind and amount of travel. at the location of the alleged defect." *MacDonald* v. *Boston,* 318 Mass. 618, 619. *Callagy* v. *Boston,* 297 Mass. 53, 54. A condition that might constitute a defect in a thickly·settled district might not amount to a defect in a remote part of a city where the traffic was lighter. And what might be a defect on a sidewalk might not be one if situated on a way used principally for vehicular traffic. *Sears* v. *Greenfield,* 287 Mass. 445, 447. Applying those principles here, we are of opinion that a projection of the sort described here, having in mind that it was located immediately adjacent to and parallel with a rail in a part of the city that was to some extent residential, was as matter of law not a defect. We think that the case at bar more nearly resembles *Swenson* v. *Boston,* 317 Mass. 295, than it does the cases cited by the plaintiff. Inasmuch as the standard of care imposed on a municipality under the statute· varies with the circumstances, a discussion of those cases would not be helpful.

Let the entry be in each case

*Judgment for the defendant.*