ELIZABETH F. GREEN *vs*. TOWN OF WILMINGTON
& another.

Middlesex. March 2, 1959. — May 1, 1959.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Way*, Public: defect.

Evidence that on a public way having no sidewalks in a residential section of a town the beginning of the "tar road" at the end of a wooden bridge was two and one half to three inches higher than the planking of the bridge did not show a defect in the way actionable by a pedestrian who, upon crossing the bridge, tripped and fell and was injured because of such difference in levels.

TORT. Writ in the Superior Court dated November 6, 1953.

The action was tried before *Fairhurst*, J.

*Philip B. Buzzell*, for the defendant town of Wilmington.

*Dwight L. Allison*, (*Benjamin F. Forde, Jr.*, with him,) for the plaintiff.

*Lawrence R. Cohen*, for the defendant Boston and Maine Railroad.

SPALDING, J. The declaration in this action of tort originally contained four counts. Counts 2 and 3 (involving the

Commonwealth and the county of Middlesex) having been
waived, the case was heard on the first and fourth counts in
which the Boston and Maine Railroad and the town of
Wilmington, respectively, were the defendants.

The plaintiff's version of the accident was as follows:
On November 9, 1952, at 8 A.M. the plaintiff, aged sixty-
eight, was walking to church in Wilmington with her neigh-
bor, Mrs. Lascelles. On reaching Shawsheen Avenue, she
turned right on it toward Main Street. Shawsheen Avenue
has no sidewalks and it has a "black top surface." It is
"a residential district where quite a few people live." It was
a "nice morning and the street was dry." At the point
where Shawsheen Avenue approached the railroad tracks of
the Boston and Maine Railroad there was a wooden bridge
over the tracks. The plaintiff, walking in front of her com-
panion, crossed the bridge on the right hand side. When
she reached the point at the end of the bridge where the tar
road begins, she tripped and fell "because the 'tar road'
was at least two and a half inches higher than the planks"
of the bridge. The portion of the road that was two and
one half inches higher than the bridge was "around two
feet wide." The planks "were all right but 'it was the road
that was high.'" The elevation was "right up" and straight
and "not sloping." The plaintiff had walked over that area
once or twice a week and had noticed that the road had been
in that condition for several months.

Helen Kulka, a daughter of the plaintiff, testified that
two days after the accident she examined the spot where the
plaintiff told her she fell and the rise of the road at the end
of the planking on the bridge was two and a half or three
inches and that the width of this rise was about two feet.

It appeared that the bridge where the accident happened
was altered and reconstructed pursuant to a report and
award of a special commission (see G. L. c. 159, § 61 et seq.)
which was confirmed by a decree of the Superior Court on
December 19, 1930. The report and award provided,
"After the completion of the work the said bridges shall
hereafter be maintained as follows: (a) The abutments and

superstructure of the bridges, including the planking and wearing surfaces thereof, shall be maintained and kept in repair by the Boston and Maine Railroad; (b) The approaches to said bridges shall be maintained and kept in repair by the Town of Wilmington."

At the close of the evidence the town (hereinafter sometimes called the defendant) presented a motion for a directed verdict, which was denied. A similar motion by the Boston and Maine Railroad was granted. To both of these rulings the defendant excepted. The case was submitted to a jury, who returned a verdict for the plaintiff. This verdict was recorded under leave reserved and the defendant's motion to enter a verdict in its favor was denied subject to its exception. The defendant also excepted to a ruling on evidence, to a refusal of a request for instruction, and to a portion of the charge.

The duty of the defendant was to keep the way in repair so that it "may be reasonably safe and convenient for travelers." G. L. c. 84, § 1. It has been said that "[t]his standard of duty is not an absolute or inflexible one, but should be given an application which is related to the character of the way and to the kind and amount of travel at the location of the alleged defect." *MacDonald* v. *Boston*, 318 Mass. 618, 619. A condition which might constitute a defect in a thickly settled district might not amount to a defect in a remote part of a town where the traffic was lighter. And what might be a defect on a sidewalk might not be a defect if situated on a way used principally for vehicular traffic. *Sears* v. *Greenfield*, 287 Mass. 445, 447 *Hawkes* v. *Metropolitan Transit Authy.* 328 Mass. 140, 144. Applying these principles here we are of opinion that the case ought not to have been submitted to the jury. The plaintiff testified that the difference in levels between the bridge and the road was two and one half inches. But her daughter's testimony was more favorable (two and one half to three inches) and we shall deal with the case on that footing. *McFaden* v. *Nordblom*, 307 Mass. 574, 575.

No case has been brought to our attention and we have

found none where an obstruction on a street of the sort here involved was held to warrant a finding of liability against a city or town.[1]  We recognize, of course, that there are cases which hold that such an obstruction might be actionable if it were on a sidewalk.  *George* v. *Malden,* 274 Mass. 606. *Duffy* v. *Boston,* 275 Mass. 13.  *Bagdikian* v. *Worcester,* 318 Mass. 707, 708.  Because there was no sidewalk on the way where she was injured, the plaintiff urges that the town's duty must be tested by the sidewalk standard rather than the street standard, at least as to that area where a sidewalk would supposedly have been.  But no authority is cited in support of this proposition and we are not disposed to adopt it.  It is a matter of common knowledge that there are many streets in the suburbs and in rural communities on which there are no sidewalks and we think that it would impose an unreasonable burden on towns if they were compelled to maintain their streets in accordance with sidewalk standards.  See *Galante* v. *Brockton,* 305 Mass. 480, 481.  The case at bar is governed by *Hawkes* v. *Metropolitan Transit Authy.* 328 Mass. 140, rather than by such cases as *Sylvia* v. *Boston,* 278 Mass. 76, and *Callagy* v. *Boston,* 297 Mass. 53, on which the plaintiff relies.

In view of this conclusion it is unnecessary to discuss the other questions argued by the defendant.

> *Exceptions sustained.*
> *Judgment for the defendant.*

---

[1] In *Sylvia* v. *Boston,* 278 Mass. 76, and *Callagy* v. *Boston,* 297 Mass. 53, relied on by the plaintiff, the defect was somewhat greater than that here and both cases were regarded by the court as "close."  The defect in *Crowell* v. *Malden,* 273 Mass. 456, would appear to be no greater than that in the case at bar, but an examination of the original papers in that case reveals that the only questions raised by the defendant related to the sufficiency of the notice and whether the defendant had or ought to have had knowledge of the alleged defect.  No question as to whether the defect was actionable was argued by the defendant and the point was not dealt with in the opinion.